UNITED STATES of America, Plaintiff,

v.

Charles DAVIS, Defendant.

Charles DAVIS, individually and on behalf of all others similarly situated, Third–Party Plaintiff,

v.

Edward DERWINSKI, or his successor, Administrator of the Veterans Administration, Third–Party Defendant.

Civ. A. No. 90–C–0067.

United States District Court, E.D. Wisconsin.

Jan. 22, 1991.

Christian R. Larsen, Asst. U.S. Atty., Milwaukee, Wis., for plaintiff.

Charles H. Barr, Milwaukee, Wis., and David A. Leen, Leen & Moore, Seattle, Wash., for defendant.

## DECISION AND ORDER

REYNOLDS, Senior District Judge.

### BACKGROUND

On January 22, 1990, plaintiff United States of America ("United States") commenced an action against defendant Charles Davis ("Davis") alleging that he owed the United States $21,393.61 plus interest, administrative costs, and penalties. This debt was incurred as a result of the Veterans Administration ("the VA") guar-

anteeing the mortgage Davis executed in order to purchase his home. On March 6, 1990, Davis filed an answer to the United States' complaint and a third-party class action complaint against the VA alleging that the VA had waived its right to collect the money in question.

On May 16, 1990, this court conducted a status conference via telephone in which all parties agreed that there were no material questions of fact in dispute and that the case should be decided on cross-motions for summary judgment. On September 5, 1990, the briefing on the motions for summary judgment and class certification was complete, and on October 4, 1990, this court conducted a hearing to hear oral argument on the motions. This court certifies the class and subclasses proposed by Davis and grants Davis's and one of the subclasses' motion for summary judgment.

### FACTS

Davis is a veteran of the United States Navy (Jul. 23, 1990 Davis Aff. ¶ 2). On August 27, 1980, Davis and his wife purchased a home in Oak Creek, Wisconsin (*Id.* at ¶ 3). In order to purchase the home, Davis executed a mortgage note and mortgage to Suburban Coastal Corporation ("Suburban") in the amount of Sixty-one Thousand ($61,000.00) Dollars (*Id.* at Exhs. A–B). As part of the VA's loan guaranty program, the VA guaranteed payment of up to 40.98% of the $61,000.00 mortgage note or $25,000 (Jul. 23, 1990 United States Memorandum at 12). The VA application for the home loan guaranty program contains an indemnity agreement in which the veteran promises to repay the VA for any debt the VA incurs as a result of guaranteeing the loan:

> As a GI home loan borrower you will be legally obligated to make the mortgage payments called for by your mortgage loan contract. The fact that you dispose of your property after the loan has been made WILL NOT RELIEVE YOU OF LIABILITY FOR MAKING THESE PAYMENTS.

\*　　\*　　\*　　\*　　\*　　\*

... you will not be relieved from liability to repay any guaranty claim which the VA may be required to pay your lender on account of default in your loan payments. The amount of any such claim payment will be a debt owed by you to the Federal Government. This debt will be the object of established collection procedures.

(*Id.* at Exh. A).

In approximately March 1985, Davis became delinquent in payment of his mortgage, and the successor of Suburban, Anchorage Mortgage Services, Inc. ("Anchorage") issued a notice of default to the VA (*Id.* at Exh. D). On April 10, 1985, Anchorage filed a Notice to Foreclose with the VA (*Id.* at Exh. E), and on May 3, 1985, the VA responded by acknowledging Anchorage's intentions and instructed it to "protect your [Anchorage's] rights against those liable, so as to protect our [VA's] subrogated rights" (*Id.* at Exh. E1).

On September 9, 1985, Anchorage commenced a foreclosure action against Davis in the Milwaukee County Circuit Court (Jul. 23, 1990 Davis Aff. Exh. C). In Anchorage's complaint, it elected to proceed with the foreclosure pursuant to Wisconsin Statutes § 846.101 (*Id.* Exh. C at ¶ 3). This enabled Anchorage to (1) reduce Davis's redemption period from twelve to six months and (2) eliminate Davis's right to a finding by a circuit court that the sheriff sold the mortgaged property for "fair value." *Glover v. Marine Bank of Beaver Dam*, 117 Wis.2d 684, 687, 345 N.W.2d 449 (1984). By proceeding under Wis.Stat. § 846.101, however, Anchorage waived the right to obtain a judgment against Davis for any deficiency. *Id.* at 688, 345 N.W.2d 449. The deficiency is the difference between the amount due on the defaulted home loan after foreclosure (including costs incurred in the foreclosure process) and the net amount realized from the sale of the security for the loan (usually the home itself).

Anchorage was able to proceed pursuant to Wis.Stat. § 846.101 because at the time Davis purchased his home, the VA specified the use of a mortgage instrument, "VA Form 26–6347," in which Davis agreed to permit Anchorage to proceed under this section during a foreclosure (Jul. 23, 1990 Davis Aff. Exh. B at ¶ 18). In addition, the VA does not dispute Davis's claim that the VA specified the use of this mortgage instrument for all of the veteran loans it guaranteed in Wisconsin.

On November 4, 1985, the Milwaukee County Circuit Court entered a judgment against Davis for the amount due on the mortgage note (Jul. 23, 1990 United States Memorandum Exh. F). This judgment provided that Davis's home could be sold at public auction conducted by the sheriff at any time after six months from November 4th (the redemption period) (*Id.* Exh. F at ¶ 5). In addition, the judgment stated that "no deficiency judgment may be obtained against the mortgagor defendants [the Davises]." (*Id.* Exh. F at ¶ 8).

On May 2, 1986, the VA issued bidding instructions to Anchorage, instructing Anchorage to bid $48,700.00 for the property if Anchorage desired to convey the property to the VA after the sale was complete (*Id.* at Exh. F2).[1] On May 5, 1986, the sheriff conducted a foreclosure sale at which Anchorage followed the VA's instructions and purchased the Davis's home for $48,700.00 (*Id.* at 12–13, Exh. G). On May 19, 1990, the Milwaukee County Circuit Court entered an order confirming the sheriff's foreclosure sale (*Id.* at Exh. G). In support of the order confirming the sheriff's sale, Anchorage's attorney submitted an affidavit to the court which stated that "no deficiency is requested from the mortgagor/defendants, same being specifically waived by plaintiff." (Jul. 23, 1990 Davis Aff. Exh. F).

On June 3, 1986, Anchorage submitted to the VA a claim for payment of the differ-

---

1. This court notes that the record is unclear, and this court is uncertain as to how the VA determined that the Davis's home was worth $48,700.00. Although during oral argument this court asked the attorneys representing the parties to explain the calculation of this number and subsequently had this portion of the transcript transcribed to review their explanation, this court remains muddled as to how this value was determined.

ence between the debt the Davis's owed Anchorage ($71,131.61 at this point in time) and the price paid for the Davis's home at the foreclosure sale ($48,700.00) (Jul. 23, 1990 United States Memorandum Exh. H). The VA analyzed Anchorage's deficiency claim and concluded that Anchorage was entitled to $22,839.61 (*Id.* at Exhs. I–J). The VA paid Anchorage $22,839.61, and then sought reimbursement from Davis for this amount. Davis unsuccessfully requested the VA to waive its claim against him, and he has subsequently refused to pay the alleged debt. The VA intercepted Davis's 1987 and 1988 income tax refunds and commenced this action in order to obtain payment.

## ANALYSIS

### I. Summary Judgment

Fed.R.Civ.P. 56(c) provides that a federal district court shall grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions, and affidavits indicate that no material facts are in dispute and that the moving party is entitled to judgment as a matter of law. *Howland v. Kilquist*, 833 F.2d 639, 642 (7th Cir.1987). The party moving the court for summary judgment has the burden of proving that no material facts are in dispute, and the court must review the record with all reasonable inferences being drawn in favor of the non-moving party. *Egger v. Phillips*, 710 F.2d 292, 296 (7th Cir.1983), *cert. denied*, 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983); *Reardon v. Wroan*, 811 F.2d 1025, 1027 (7th Cir.1987). In the present case, there are no material facts in dispute and a ruling on summary judgment is appropriate.

### A. Veterans Administration's Rights Against the Veteran

Title 38 of the United States Code of Federal Regulations ("C.F.R.") Part 36.-4323, entitled "Subrogation and Indemnity", provides the VA with two alternative theories for collecting on a deficiency owed by a veteran. First, § 36.4323(a) states that the VA is subrogated to the rights of the holder of the mortgage note (usually the lender) and that the VA can obtain repayment of a deficiency from the veteran under a subrogation theory. The regulations require the holder to give the VA thirty (30) days notice before pursuing a foreclosure action. 38 C.F.R. § 36.4317. This notice provides the VA with the opportunity to direct the holder as to how to proceed with the foreclosure action in state court. 38 C.F.R. § 36.4324(f); *See United States v. Church*, 736 F.Supp. 1494, 1497–99 (N.D.Ind.1990). In addition, if the holder releases the personal liability of the veteran without the permission of the VA, then the regulations release the VA from its obligation as the guarantor. *Id.*

Second, 38 C.F.R. § 36.4323(e) states that any amount paid by the VA as a result of a veteran's mortgage loan constitutes a debt owed by the veteran to the VA. This section applies directly to the indemnity agreement the veteran enters into with the VA as part of the application for the home loan guaranty.

In the present case, the VA concedes that it cannot recover from Davis based on the subrogation theory because in Anchorage's initial state court foreclosure complaint Anchorage waived its right to recover any deficiency by electing to proceed pursuant to Wis.Stat. § 846.101. As noted earlier, the VA's subrogation right to payment is based entirely on Anchorage's right to obtain a deficiency judgment, which Anchorage waived.

The VA, however, claims that it can recover under the indemnification theory because (1) Davis signed the application for the home loan guaranty which contained an indemnity agreement, and (2) the United States Supreme Court in *United States v. Shimer* held that the VA's right to indemnity is separate and distinct from the VA's subrogation right. 367 U.S. 374, 81 S.Ct. 1554, 6 L.Ed.2d 908 (1961). Davis, on the other hand, argues that the facts of *Shimer* are distinguishable from the present case. Davis claims that the facts and holding of a case in the Ninth Circuit, *Whitehead v. Derwinski*, are directly on point, and that this court should follow the

*Whitehead* decision. 904 F.2d 1362 (9th Cir.1990).

**B.** *Shimer* as Compared to *Whitehead*

The Supreme Court in *Shimer* held that the federal regulations provided the VA with an independent right of indemnity against a veteran. The Court stated:

> Moreover, the recognition of a loss to the guarantor merely because of a failure of the lender's rights against the principal is incompatible with the background of general surety law against which the statute was drawn. Indeed, at the time of the 1945 amendments to the Act the Administrator had already ruled that there was a right to recover over against the veteran on a theory of indemnity in situations where recovery by way of subrogation was barred by state law.
>
> For these reasons, we are constrained to agree with the uniform construction of the lower courts, including that of the two courts below, that the statute affords an independent right of indemnity to the Veterans' Administration.

*Shimer,* 367 U.S. at 387, 81 S.Ct. at 1562–63 (citations omitted).

The Ninth Circuit Court of Appeals in *Whitehead,* however, narrowly interpreted the Court's holding in *Shimer.* The appellate court interpreted *Shimer* as holding that the VA only has an independent right to indemnity when the state law limiting the VA's right to subrogation directly conflicts with federal regulations. The appellate court stated:

> The federal statutory and regulatory scheme contemplates reliance on state foreclosure procedures. Where state procedures preclude holding the debtor personally liable, the VA retains its right to do so by way of indemnity. Where, as in the state of Washington, state foreclosure procedures afford the VA identical protections, there is no conflicting state law to displace.

*Whitehead,* 904 F.2d at 1369. Essentially, the appellate court held that the VA has a right to indemnity only when state law *always* bars the lender, and thereby the VA, from recovering a deficiency against the veteran. *Id.* If, however, state law permits the lender to preserve its and the VA's right to a deficiency by proceeding in a particular manner, then the VA forfeits its right to indemnity. *Id.*

Although this court agrees with the final holding in *Whitehead,* it is not convinced that the court of appeals' analysis distinguishing *Whitehead* from *Shimer* is persuasive or correct. First, the portion of the Supreme Court's decision in *Shimer* which discusses the conflict between state law and the federal regulations does not concern the issue of whether or not the VA has an independent indemnity right. The Court only discusses conflict between state law and federal regulations in the portion of its decision involving the issue of whether or not the VA, as a guarantor, is obligated to pay the *lender* for the veteran's deficiency. *Shimer,* 367 U.S. at 377–81, 81 S.Ct. at 1557–60.

In *Shimer,* the veteran had successfully argued in the appellate court that the VA could not recover from him any amount the VA was not obligated under state law to pay the lender on his behalf. *Id.* at 376–77, 81 S.Ct. at 1556–58. The Supreme Court, however, held that the appellate court should not have used state law to determine whether or not the VA was obligated to pay the lender, but should use the pertinent federal regulations. *Id.* at 380–81, 81 S.Ct. at 1559–60. In discussing the regulatory scheme applicable for determining the VA's liability to the lender, the Court stated:

> We have no doubt that this regulatory scheme, complete as it is in every detail, was intended to provide the whole and exclusive source of protection of the interests of the Veterans' Administration as guarantor and was, to this extent, meant to displace inconsistent state law.

*Id.* at 381, 81 S.Ct. at 1559 (footnote omitted). Thus, the Supreme Court's discussion in *Shimer* of conflict between state law and federal regulations does not pertain to the issue involving the VA's right to indemnity.

Second, in the portion of the Supreme Court's opinion which addresses the VA's

right to indemnity, there is no discussion of this right being dependent on the state law always prohibiting the VA's right to subrogation. In fact, the Court explicitly rejected the veteran's argument that under the circumstances of the case, which were essentially identical to those in *Whitehead,* the VA could only recover on a theory of subrogation, not on a theory of indemnity. *Id.* at 376, 81 S.Ct. at 1556–57. The circumstances in *Shimer* and *Whitehead* were identical because although state law permitted the lender to obtain a deficiency judgment against the veteran,[2] the lender waived its right. *Id.* at 377, 81 S.Ct. at 1557–58. In *Shimer,* however, the Court held that even though the lender's waiver also waived the VA's right to subrogation, the VA could collect against the veteran based on the independent indemnity agreement. *Id.* at 387–88, 81 S.Ct. at 1562–63. Thus, this court concludes that *Whitehead,* and the present case, are not distinguishable from *Shimer* on the grounds that the state law foreclosure statutes do not conflict with the federal regulations governing foreclosure procedures.

This court, however, notes that the Ninth Circuit Court of Appeals in *Whitehead* also seemed to base its holding on the ground that the VA controlled whether or not the lender preserved the VA's subrogation right. *Whitehead,* 904 F.2d at 1369. The court of appeals stated:

Because the VA directs the lender's choice between the two methods available [one maintains right to deficiency judgment] in Washington, it is in complete control of its ability to be made whole. Given the availability of the judicial foreclosure alternative, which allows the VA to exercise its primary right to subrogation and proceed directly against the debtor, the VA may not choose the non-judicial foreclosure alternative, and then resort to its right to indemnity.

*Id.* In addition, a United States District Court for the District of Minnesota has interpreted the *Whitehead* decision to be based primarily on the fact that the VA controlled whether or not it had a right to subrogation:

The court's holding [in *Whitehead*] was based on the V.A.'s complete control of its power to be made whole when a state provides alternative methods of foreclosure. If a veteran defaults on a loan, the lender must give the V.A. thirty days notice before foreclosing. 38 C.F.R. § 36.4317. The V.A. then has fifteen days in which to notify the lender to proceed in "such manner as to effectively preserve the personal liability of the parties liable...." 38 C.F.R. § 36.4324(f).

*Vail v. Derwinski,* 742 F.Supp. 1039, 1042 (D.Minn.1990). After putting forth this observation, the district court then essentially adopted the *Whitehead* holding. *Id.* at 1043.

Neither the *Whitehead* nor *Vail* decisions, however, address the issue of how the VA's control over the lender distinguishes those cases from *Shimer.* In fact, this court finds that the facts regarding the VA's control over the lender were essentially identical in *Shimer, Whitehead,* and *Vail.* Regulation 38 C.F.R. § 36.4324(f), which was in effect at the time of *Shimer,*[3] explicitly states that if the lender releases the personal liability of the veteran, either via action or inaction, without the prior approval of the VA, then the VA's obligation as a guarantor expires. The practical effect of this regulation is that in *Shimer,* as in *Whitehead* and *Vail,* the VA had the power to direct the lender to follow those state law foreclosure procedures which preserved the lender's, and the VA's, right to obtain a deficiency judgment. If the lender refused to follow the VA's directions and released the veteran of his personal liability, then the VA would not be required to pay the lender as a guarantor

**2.** A deficiency judgment was available to the lender in *Shimer* as long as it obtained a court determination of the fair market value of the mortgaged property and credited that amount to the unsatisfied liability. *Id.* (citing Purdon's Pa. Stat., Tit. 12, §§ 2621.1–2621.11); *see also Bank Leumi: LE–Israel, B.M. v. Zimmerman,* 396 Pa. Super. 409, 578 A.2d 967, 968–69 (1990).

**3.** *See* 13 Fed.Reg. 7278, Nov. 27, 1948 as amended at 24 Fed.Reg. 6315, Aug. 6, 1959; 35 Fed. Reg. 7728, May 20, 1970; 46 Fed.Reg. 43673, Aug. 31, 1981; 52 Fed.Reg. 26342, Jul. 14, 1987.

of the mortgage note. *See Church*, 736 F.Supp. at 1497–99. Thus, this court concludes that the VA's control over the lender in *Whitehead* and in the present case, also does not distinguish this case from *Shimer*.

### C. *Shimer* is Not Controlling

■ This Court, however, is convinced that the Supreme Court would limit its holding in *Shimer* if it were to consider the facts that were present in either *Whitehead, Vail,* or the present case. In the present case, the parties agree that a lender seeking foreclosure in Wisconsin has a choice to either (1) waive its right to obtain a deficiency from the veteran in return for an expedited and less costly judicial foreclosure (Wis.Stat. § 846.101) or (2) maintain its right to deficiency by proceeding with a relatively more time consuming and costly judicial foreclosure (Wis.Stat. §§ 846.10(2), 846.165(2)). There also is no dispute that the federal regulations provide the VA with the power, whether or not it chooses to exercise it, to direct the lender to foreclose in a manner which preserves the lender's and the VA's right to a deficiency. 38 C.F.R. § 36.4324(f). Finally, there is no dispute that if the lender fails to follow the VA's directions and forfeits its right to a deficiency, then the VA is not obligated to pay the lender for the deficiency amount. *Id.; Church*, 736 F.Supp. at 1497–99.

The problem with a broad interpretation of *Shimer* is that it permits the VA to obtain the benefits of Wisconsin's expedited foreclosure proceeding without having to incur the costs. There is no indication that the Supreme Court in *Shimer* ever considered or intended this outcome of its holding. More importantly, this result is inequitable and directly contravenes the intent of the Wisconsin foreclosure laws, and this court concludes that if the Supreme Court were to consider this result, then it would limit its *Shimer* decision. Thus, although this court finds that the pertinent facts of the present case are indistinguishable from those in *Shimer*, it holds that the VA is estopped from seeking a deficiency against a veteran under its indemnity agreement when the lender forecloses against the veteran pursuant to Wis.Stat. § 846.101.

### II. Class Certification

■ The plaintiffs seeking certification of a class are required to satisfy the four requirements of Rule 23(a) of the Federal Rules of Civil Procedure, and at least one of the requirements of Rule 23(b).

### A. Four Requirements of Rule 23(a)

Rule 23(a) requires the plaintiffs to demonstrate that:

(1) The class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative party are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

The plaintiffs have satisfied each of these four requirements, and therefore this court certifies the class and proposed subclasses.

#### 1. Numerosity

The VA does not contest that the proposed class would be so numerous that joinder of all class members is impracticable (Aug. 21, 1990 Third–Party Defendant's Response Memorandum at 3). Davis estimates that there are approximately two thousand (2,000) veterans from whom the VA is seeking to collect a deficiency which arose from a Wisconsin foreclosure (Jun. 29, 1990 Leen Aff. ¶ 5). Thus, this court concludes that joinder of all class members is impracticable, and the numerosity requirement of Fed.R.Civ.P. 23(a) is satisfied.

#### 2. Commonality

There are questions of fact and law common to the proposed class. The legal issue in Davis's third-party complaint, which this court resolved on summary judgment, is identical for all members of the class: whether or not the VA can seek payment from a veteran for a deficiency based on the indemnity agreement when the VA's subrogation right to collect the deficiency against the veteran is not preserved in the

Wisconsin state court foreclosure proceedings.

The relevant factual questions are also common to all members of the class. In light of this court's decision on the parties' cross-motions for summary judgment, the dispositive question of fact that remains is whether or not the VA's right to a deficiency judgment under a subrogation theory was preserved in the Wisconsin state court foreclosure proceeding which the mortgage note holder brought against the veteran. If this right were preserved, i.e. the holder did *not* proceed under Wis.Stat. § 846.101, then the VA can seek payment from the veteran for the deficiency it had to pay to the holder. If, however, the VA's right was not preserved, then the VA is enjoined from obtaining or seeking payment for the deficiency from the veteran. This court also notes that if the holder of the mortgage note ignored the VA's directions to preserve the VA's subrogation right, then the VA also is enjoined from seeking or obtaining payment from the veteran because the VA was not obligated, as a guarantor, to pay the holder for the deficiency. *Church*, 736 F.Supp. at 1497–99. Thus, this court concludes that the questions of law and fact are common to all members of the proposed class and the commonality requirement of Rule 23(a) is satisfied.

### 3. Typicality

This court finds that Davis's claim is typical of that which would be brought by all veterans whom the VA is currently seeking to obtain a deficiency judgment against based on the independent indemnity agreement. The VA, however, argues that Davis's claim is not typical of subclass # 1 which Davis has proposed as follows:

> Those individuals, included in the above class, against whom a final judgment has been entered in a court of record on such claim.

(Jul. 23, 1990 Memorandum in Support of Class Certification at 2). Davis has requested this court to vacate all final judgments entered against this subclass and to order the VA to repay any monies obtained from this subclass. There are, however, legal issues regarding principles of res judicata which affect this subclass which neither Davis nor the VA has fully briefed. Thus, as a starting point, this court finds that Davis's motion for summary judgment on behalf of subclass # 1 is denied without prejudice.

■ The typicality requirement, however, is primarily designed to ensure that the representative class plaintiff(s) are motivated to pursue the best interests of the class. In essence, this requirement "overlaps the requirements that the named representatives adequately represent the class, that there be common questions of law and fact, that such questions predominate, and that the class action be a superior means of resolution." *Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3rd Cir.1985), (citing H. Newberg, 1 *Newberg on Class Actions*, § 1115a (1977) and 3B *Moore's Federal Practices*, ¶ 23.06–2 (1985)), *cert. denied*, 474 U.S. 946, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985). Typicality, however, does not require the named plaintiff to be in the identical situation as every member of the class. *Adams v. Califano*, 474 F.Supp. 974 (D.Md.1979), *aff'd* 609 F.2d 505 (4th Cir.1979); *Penn v. San Juan Hospital*, 528 F.2d 1181, 1189 (10th Cir.1975). The critical issue is whether or not the plaintiff's interests are antagonistic to the class.

In the present case, the interests of Davis are not antagonistic to the interests of proposed subclass # 1. In addition, the record to date indicates that Davis and his attorney would adequately represent the interests of this subclass by vigorously pursuing an order vacating the deficiency judgments which the VA currently has against the members of that subclass. Thus, this court concludes that Davis's claim is typical of the claims of both the class and proposed subclasses and that the typicality requirement of Rule 23(a) is satisfied.

### 4. Adequacy of Representation

The final requirement of Rule 23(a) is that the representative parties will fairly and adequately protect the interests of the class. The VA argues that Davis will not fairly and adequately protect the interests

of the entire class (specifically subclass # 1) for the identical reasons that it argued that Davis's claim was not typical of the class. As this court noted in the section regarding typicality, Davis's interests are not antagonistic to the interests of the members of subclass # 1, and the record indicates that he would fairly represent them.

The "adequacy of representation" requirement, however, also requires that counsel for the named representative be competent to handle the litigation. Davis's primary counsel, David A. Leen, successfully handled the *Whitehead* litigation, discussed at length herein, which renders him more than competent to handle this action. In addition, Davis's local counsel has experience with litigation in the federal court in the Eastern District of Wisconsin. *United States v. Citko*, 517 F.Supp. 233 (E.D.Wis. 1981). Thus, this court concludes that Davis will fairly and adequately protect the interests of the class and that the "adequacy of representation" requirement of Rule 23(a) is satisfied.

B. Requirements of Rule 23(b)

Fed.R.Civ.P. 23(b) provides in pertinent part:

> *Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
>
> \* \* \* \* \* \*
>
> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

The VA argues that this requirement is not satisfied because the VA did not participate in the mortgage holder's decision as to how to proceed with the state court foreclosure proceeding. In light of this court's summary judgment decision, this argument is unpersuasive.

First, the VA has acted similarly toward all members of the proposed class because the VA permitted the holder of the mortgage note to waive the VA's right to a deficiency judgment against the veteran based on a subrogation theory. As noted earlier, the question of whether or not the VA directed the holder to preserve the VA's subrogation rights is inapposite because (1) if the VA did not direct the holder how to proceed, then it was acquiescing in the holder's decision to waive the VA's subrogation right and (2) if the VA directed the holder to preserve the VA's subrogation right and the holder did not do so, then the VA was not obligated to pay the holder and there is no deficiency against the veteran. *See* 38 C.F.R. § 36.4342(f); *Church*, 736 F.Supp. at 1497–99.

Second, the proposed class is seeking to enjoin permanently the VA from seeking a deficiency from a veteran in Wisconsin based on the indemnity agreement the veteran entered into with the VA. The members of Davis's proposed subclass # 2, however, also have requested equitable restitution for monies the VA has obtained from them prior to obtaining a deficiency judgment based on the indemnity agreement. In addition, the members of the proposed subclass # 1, those veterans for whom the VA has obtained deficiency judgments, are seeking equitable restitution of the monies which the VA has collected from them. The amount due and owing to the members of both subclasses, however, is easily ascertainable from the records of the VA, and individual testimony of the subclass members does not appear to be required. Thus, this court concludes that the requirements of Rule 23(b)(2) are satisfied and certifies the following class and subclasses:

> CLASS: All veterans or widows of veterans or other individuals eligible for home loan guarantees or insurance provided pursuant to Title 38, United States Code, Chapter 37, against whom a claim has been or will be made by the United States pursuant to either 38 C.F.R. § 36.4323(e) or a written indemnity agreement, which claim arose or will arise because of a claim paid by the United States to a lender which submitted such claim to the United States as a result of a foreclosure conducted in the State of Wisconsin, in which the lender

elected and was permitted to waive deficiency and accelerate the redemption period pursuant to Wis.Stats. § 846.101 (1989), but excluding any claims based upon foreclosure of mortgages executed after December 31, 1989. This class includes the following subclasses:

SUBCLASS # 1: Those individuals included in the above class against whom a final judgment has been entered in a court of record on such claim; and

SUBCLASS # 2: Those individuals included in the above class from whom the VA has collected monies based upon a claim under 38 C.F.R. § 36.4323(e) or written indemnity agreement without having obtained a final judgment, by way of voluntary payment, offset of benefits or tax refunds, garnishment of wages or other collection efforts.

In addition, based on the summary judgment portion of this court's decision, this court grants summary judgment in favor of all members of subclass # 2. This court, however, reserves ruling on summary judgment for subclass # 1 and requests the parties to file briefs with this court as to whether or not this court should vacate the final judgments entered against members of subclass # 1 and order the VA to repay the monies it has collected from the members of this subclass.

IT IS THEREFORE ORDERED that third-party plaintiff Charles Davis's motion for certification of the proposed class and subclasses defined herein is GRANTED.

IT IS FURTHER ORDERED that third-party plaintiff Charles Davis's motion for summary judgment on behalf of subclass # 1 is DENIED without prejudice.

IT IS FURTHER ORDERED that on or before fourteen (14) days from the date of this order the parties shall submit briefs to this court on Charles Davis's motion for summary judgment vacating the judgments the Veterans Administration holds against the members of subclass # 1. In addition, the parties shall have ten (10) days from the date they receive the other party's brief to file a responsive brief.

IT IS FURTHER ORDERED that third-party defendant Veterans Administration's motion for summary judgment against Charles Davis and the class and proposed subclasses is DENIED.

IT IS FURTHER ORDERED that third-party plaintiff Charles Davis's motion for summary judgment on behalf of himself and subclass # 2 is GRANTED and the Veterans Administration is permanently enjoined as follows:

(1) from making assessments against members of subclass # 2 for loan guaranty payments made to lenders following foreclosures of the real property security for VA guaranteed or insured loans, in which the provisions of Wis.Stats. § 846.101 were used;

(2) from terminating, setting-off against, reducing or otherwise denying VA benefits for which members of subclass # 2 are eligible because of such assessments or claims;

(3) from denying eligibility to members of subclass # 2 to VA home loan guarantee programs because of such assessments or claims;

(4) from undertaking or continuing any collection activity against the members of subclass # 2 because of such assessments or claims.

IT IS FURTHER ORDERED that the Veterans Administration shall refund to the members of subclass # 2 the monies it has collected from them, including the value of any benefits set-off against the claims. To facilitate this refund, the Veterans Administration shall provide to this court and serve upon third-party plaintiff on or before sixty (60) days from the date of this order an accounting of all the members of subclass # 2 who may be entitled to refunds. The accounting shall:

(1) identify the individual members of subclass # 2 by name, date of birth, social security number, service number (if different), branch of service, last known address, date of foreclosure, amount of deficiency assessed against claimant, amount collected, date file closed, reason file closed (e.g., payment, compromise, waiver, bankruptcy, death, etc ...);

**1172**

(2) indicate the amount of money due to subclass #2 as a result of this decision;

(3) provide third-party plaintiff's counsel copies of any backup documentation associated with the identification of the members of subclass #2;

(4) be certified by the Veterans Administration's general counsel as having identified all members of subclass #2 or provide an explanation as to why the accounting may be incomplete.

IT IS FURTHER ORDERED that third-party plaintiff shall file any objections to the accounting on or before twenty-one (21) days from the date he receives it and the Veterans Administration shall file, if it deems it necessary, a response to the objection within fourteen (14) days from receiving it.

IT IS FURTHER ORDERED that this court will address the following issues after the motion for summary judgment for subclass #1 is decided:

(1) the procedures for notifying members of subclass #2, and possibly subclass #1 of this decision and their right to obtain a refund from the Veterans Administration of the monies collected by the VA from them;

(2) the establishment of a fund to be used to pay claims filed by members of subclass #2 and possibly subclass #1;

(3) the procedures for filing a claim against and obtaining repayment from the fund;

(4) the creation of a final distribution plan for the fund including the possible distribution of unclaimed monies; and

(5) third-party plaintiff's application for attorney's fees and costs, including costs associated with administering the fund.