Henry and Joann ROZEMA, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

THE MARSHFIELD CLINIC and Security Health Plan of Wisconsin, Inc., Defendants.

Kathleen V. MALEK, State of Wisconsin Department of Health and Family Services, and Plaintiffs,

v.

THE MARSHFIELD CLINIC, Security Health Plan of Wisconsin, Inc., North Central Health Protection Plan, and Rhinelander Medical Center, S.C., Defendants.

Harriet HALIDA, Lawrence Halida, Island Sports Center, Inc., a corporation, Mark McKay, and Town of Mercer Sanitary District # 1, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

THE MARSHFIELD CLINIC, Security Health Plan of Wisconsin, Inc., North Central Health Protection Plan, and Rhinelander Medical Center, S.C., Defendants.

Nos. 96–C–592–C, 96–C–916–C and 96–C–730–C.

United States District Court, W.D. Wisconsin.

May 19, 1997.

James A. Olson, Lawton & Cates, S.C., Madison, WI, for Henry Rozema.

Stephen E. Meili, Center for Public Representation, Madison, WI, for Joann Rozema.

Britt L. Tinglum, Keller Rohrback, L.L.P., Seattle, WA, for Harriett Halida.

Gerard W. Cook, O'Halloran, Kosoff, Helander, Geitner & Cook, P.C., Northbrook, IL, for Kathleen Malek.

Richard Perkins, Assistant Attorney General, Madison, WI, for State of Wisconsinm Department of Health and Human Services.

Steven J. Caulum, Bell, Metzner, Gierhart & Moore, Madison, WI, for The Marshfield Clinic and Security Health Plan of Wi., Inc.

Kevin D. McDonald, Jones, Day, Reavis & Pogue, Washington, DC, for Marshfield Clinic.

John M. Loomis, Milwaukee, WI, for North Central Health.

Todd R. McEldowney, O'Melia, Schiek & McEldowney S.C., Rhinelander, WI, for Rhinelander Medical.

## OPINION AND ORDER

CRABB, District Judge.

These are civil antitrust actions for monetary, declarative and injunctive relief brought pursuant to the Sherman Act, 15 U.S.C. § 1, and Wis. Stat. § 133.03. The Rozema, Malek and Halida plaintiffs contend that defendants The Marshfield Clinic and Security Health Plan of Wisconsin, Inc. violated the federal and state statutes by entering into a continuing contract, combination or conspiracy to divide markets illegally in restraint of trade.[1] These consolidated cases are before the court on plaintiffs' motions for class certification under Fed.R.Civ.P. 23.

Defendants oppose the certification of any class in these cases, arguing that plaintiffs cannot satisfy the prerequisites of Fed. Rule. Civ. P. 23(a) or (b). Specifically, defendants contend that plaintiffs make only conclusory allegations regarding the class certification requirements; plaintiffs are not members of the proposed class and do not have standing;

1. The Malek and Halida plaintiffs have settled their claims against defendants North Central Health Plan of Wisconsin and Rhinelander Medical Center, S.C.

plaintiffs' claims of antitrust liability, injury in fact and damages are not subject to common proof; and the affirmative defenses of standing and statute of limitations, multiple product and geographic markets, multiple alleged conspiracies and differences in pricing and payment methods create individual questions of fact and law that predominate over common questions.

The Rozema, Malek and Halida plaintiffs have failed to provide sufficient information to support their proposed class definitions and their assertions that they meet certain requirements for class certification. As a result, I will reserve ruling on their motions for class certification until plaintiffs refine their definition of their proposed classes and clarify specific issues outlined in the opinion. Denying the motions would not be appropriate at this stage, because it appears that the named plaintiffs have claims typical of potential class members, can represent the class adequately and there are common issues relating to liability and injury among the proposed class members.

For the sole purpose of deciding this motion, I find that plaintiffs' complaints fairly allege the following.

### ALLEGATIONS OF FACT

Plaintiffs Henry and Joann Rozema are married and reside in Marshfield, Wisconsin. The Rozemas purchased physician services from defendants The Marshfield Clinic and Security Health Plan, Inc. during the period of the alleged antitrust violations by defendants. The Rozemas are suing on behalf of themselves and other purchasers of physician services from defendants. They define physician services as products and services related to primary and specialty health care, including pharmaceuticals, laboratory tests, inpatient and out-patient services and health maintenance organization health care packages, services and products.

Plaintiff Kathleen V. Malek resides in Woodruff, Wisconsin (Oneida County). Malek has been and will continue to be a purchaser of health care services from defendant The Marshfield Clinic. The fees charged to Malek by The Marshfield Clinic for health care services have been paid in part by the Wisconsin Medical Assistance Plan, which is administered by the Wisconsin Department of Health and Family Services. Plaintiff Wisconsin Department of Health and Family Services is joined as a party pursuant to its subrogation interest for fees charged by defendants that were paid in part by the Wisconsin Medical Assistance Plan. Malek is suing on behalf of herself and purchasers of health care services from one or more of the defendants during the period of alleged antitrust violations, including those purchasers reimbursed in whole or in part by the Wisconsin Medical Assistance Plan.

Plaintiffs Harriet Halida and Lawrence Halida, residents of Loyal, Wisconsin (Clark County), are subscribers to The Marshfield Clinic's Greater Marshfield Health Plan, which is underwritten by defendant Security Health Plan, Inc. Plaintiff Island Sports Center is a corporation organized and existing under Wisconsin law that operates a sporting goods store in Minocqua, Wisconsin. Island Sports Center is the purchaser of an employer group health maintenance organization plan from defendant Security Health Plan, Inc. Plaintiff Mark McKay resides in Hazelhurst, Wisconsin (Oneida County). He is an individual subscriber to The Marshfield Clinic's Greater Marshfield Health Plan, which is underwritten by Security Health Plan, Inc., under the employer group plan issued to Island Sports Center. Plaintiff Town of Mercer Sanitary District # I is organized under Wisconsin law with its principal place of business in Mercer, Wisconsin. The Sanitary District is a purchaser of an employer group health maintenance organization plan from defendant Security Health Plan, Inc. The named plaintiffs are suing on behalf of themselves, individual and employer group subscribers to the Greater Marshfield Health Plan, purchasers of defendants' health care plans and employers and employees enrolled or subscribing to defendants' health care plans.

Defendant The Marshfield Clinic is a Wisconsin corporation organized under Wis. Stat. Ch. 180. It is the largest physician-owned clinic in the state of Wisconsin, with annual revenues of over $200 million. It has its main office in Marshfield, Wisconsin and

maintains 21 branch offices in 14 counties in North Central Wisconsin.

Defendant Security Health Plan, Inc. is a Wisconsin health maintenance organization organized under Wis. Stat. Ch. 613 and a wholly owned subsidiary of The Marshfield Clinic. Since 1987, The Marshfield Clinic has controlled Security Health Plan, Inc.'s policies, practices and procedures and has maintained Security Health Plan, Inc. as its exclusive health maintenance organization. (A health maintenance organization charges its subscribers a fixed annual fee for services instead of charging separately for each medical procedure and provides services through physicians who contract with it.) Security Health Plan, Inc. provides services to approximately 70,000 enrollees, who are referred to physicians and specialists at The Marshfield Clinic.

### 1. Rozema complaint

The Rozema plaintiffs allege that beginning as early as 1987 and continuing to the present, The Marshfield Clinic allocated customers and territories with the Rhinelander Medical Center, S.C., North Central Health Protection Plan, Wausau Area physicians and the Wausau Medical Center and allocated customers, territories, products and services with the Sisters the Sorrowful Mother Ministry Corporation. As a result of these practices, the prices of physician services were raised, fixed, pegged or stabilized and plaintiffs have and continue to be damaged in an amount to be determined.

### 2. Malek and Halida complaints

The complaints filed in the Malek and Halida cases are identical with respect to the following allegations.

Defendants sell a number of products and services, including total physician care, primary and specialty health care, managed health care plans, inpatient and outpatient hospital services, pharmaceuticals, laboratory tests, outpatient services and facilities packages. The Marshfield Clinic sells its physician and other services and products through Security Health Plan, Inc.

Defendants operate in a number of defined geographic markets, offering particular products and services in each market. Generally, a geographic market includes either an approximate 25–mile radius or a county. For example, defendants' non-competition agreements with their participating physicians define a market as a county or as an area approximately 25 miles in radius around the branch clinic or practice location. However, for total physician services, primary health care and hospital services, the geographic market is defined by the reasonable distance most patients will travel for those services. For specialty physician and outpatient services, the market is the county in which the specialized care is provided and those immediately adjacent counties in which specialized care is unavailable. The geographic market of a managed health care plan depends on that of the participating primary care physicians who either directly treat or refer patients to specialized physicians.

Since at least 1987 and continuing into the present, The Marshfield Clinic, Security Health Plan, Inc., North Central Health Protection Plan, Rhinelander Medical Center, S.C., unaffiliated physicians and clinics and other co-conspirators have divided markets, customers and territories for health plan and health care services. The Marshfield Clinic, Security Health Plan, Inc. and North Central Health Protection Plan agreed not to open offices in each other's territories. In 1992, although Security Health Plan, Inc. had fewer than thirty percent of the health maintenance organization subscribers in the counties of Lincoln and Marathon where North Central Health Protection Plan was active, it enrolled more than ninety percent of the subscribers in the surrounding counties of Oneida, Price, Taylor, Clark and Ward.

The actions of defendants have had a number of effects. Competition has been eliminated among The Marshfield Clinic, Security Health Plan, Inc., their co-conspirators and would-be competitors. Products are defined and controlled by defendants' division of geographical markets, territories and customers and there are no viable substitutes for defendants' products. Prices of health care services, health plans, and health care insurance

within the markets where the defendants have divided customers, territories and markets have been fixed, raised, maintained and stabilized at artificially high and uncompetitive levels throughout North Central Wisconsin. For example, physician fees and rates charged by The Marshfield Clinic within the geographic markets where it has a dominant number of physicians and market power are substantially higher (as much as twenty percent) than those in comparable areas. Published independent studies indicate that The Marshfield Clinic has the highest-priced physician services in Wisconsin, with prices substantially above the average. The premiums charged by Security Health Plan, Inc. are substantially higher than other health maintenance organizations and exceed Wisconsin state averages for federal and state employee plans.

The Malek and Halida plaintiffs have been injured because they have paid more for health plan services and health care services than they would have otherwise paid in a free and open competitive market.

## OPINION

In determining whether certification of a class is appropriate, allegations made in support of certification are taken as true, and the merits of the case are not considered. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974); *Koch v. Stanard,* 962 F.2d 605, 607 (7th Cir.1992). Plaintiffs bear the burden of showing that the class certification requirements have been met. *General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 2373–72, 72 L.Ed.2d 740 (1982); *Retired Chicago Police Association v. City of Chicago,* 7 F.3d 584, 596 (7th Cir.1993). Fed.R.Civ.P. 23 is to be interpreted liberally and in favor of the maintenance of class actions. *King v. Kansas City Southern Indus., Inc.,* 519 F.2d 20, 25–26 (7th Cir.1975). The rule is equally applicable in antitrust cases. *See In Re Aluminum Phosphide Antitrust Litigation,* 160 F.R.D. 609 (D.Kan.1995); *T.R. Coleman v. Cannon Oil Company,* 141 F.R.D. 516, 520 (M.D.Ala. 1992) ("Sometimes a class-action lawsuit is the only way in which consumers would know

of their rights at all, let alone have a forum for their vindication."); 4 Newberg & Conte, *Newberg on Class Actions* § 18.01, at 4–5 (3d ed. 1992) (Rule 23 allows small consumers who are direct purchasers from defendants to band together and enforce their antitrust claims).

Rule 23 requires a two-step analysis to determine whether class certification is appropriate. *See Rosario v. Livaditis,* 963 F.2d 1013, 1017 (7th Cir.1992); *Wagner v. The NutraSweet Company,* 170 F.R.D. 448, 449–50 (N.D.Ill.1997). First, plaintiffs must satisfy the four prerequisites in Rule 23(a): (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequate representation). *See id.* If these four requirements are met, plaintiffs must satisfy one of the requirements of Fed.R.Civ.P. 23(b).

Additionally, there are two implicit requirements of Rule 23. *White v. National Football League,* 822 F.Supp. 1389, 1402 (D.Minn.1993). First, a proposed class definition must be precise, objective and presently ascertainable. *Manual for Complex Litigation* § 30.14 (3d ed.1995). "Definitions, particularly under [Rule 23](b)(3), should avoid criteria that are subjective (e.g., a plaintiff's state of mind) or that depend on the merits (e.g., persons who were discriminated against)." *Id.; see also Simer v. Rios,* 661 F.2d 655, 669 (7th Cir.1981) (a class defined in relation to each individual's state of mind is not sufficiently definite). However, if a class is amorphous or indefinite, the court may limit or redefine the class to bring it within Rule 23. *See Gomez v. Illinois State Board of Education,* 117 F.R.D. 394, 397 n. 2 (N.D.Ill.1987); 7B Charles A. Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice and Procedure* § 1760, at 128–29 (2d ed.1986). Second, the named class representatives must be members of the class that they propose to represent. *White,* 822 F.Supp. at 1402.

■ Finally, standing is a "threshold requirement for the maintenance of a federal class action and must be considered in addition to the requirements of Rule 23." 7B Wright A. Wright, Arthur R. Miller, Mary Kay Kane, § 1785.1, at 139. Standing ensures both that a justiciable issue is present and that the class representatives are "sufficiently interested so that full litigation of the issues involved is assumed." *Id.* Although plaintiffs were not required to allege facts in their complaints showing that they have standing, *see* Opin. & Order at 18–22 (March 10, 1997), plaintiffs must make at least a threshold showing of standing in order to be members of the proposed class, adequately represent it, and have claims typical of potential class members. *See* 7B Wright et al. § 1785.1, at 139–140.

### A. *Plaintiffs' Proposed Classes*

The Rozema plaintiffs propose the following class:

> All Purchasers of Physician Services from the defendants Marshfield Clinic and/or Security Health Plan for purchases in the geographic area including Clark, Price, Lincoln, Oneida, Marathon, Taylor, Portage and Wood counties.

Plts' Reply Brief, dkt. # 90 at 6. The Rozema plaintiffs have alleged violations from 1987 through the present. The Malek and Halida plaintiffs define their proposed class as follows:

> All purchasers of health care plans or health care services from The Marshfield Clinic and Security in the geographic areas where defendants unlawfully divided markets during the period of the alleged antitrust violations, including:

> > All employers who purchased group health care plans or health care services and all employees who were enrolled in group health care plans sold by defendants or who purchased health care services from defendants.

> > All purchasers of health care services from one or more of the defendants whose purchases were paid or reimbursed in whole or in part by the Medical Assistance Plan maintained by the State of Wisconsin.

Plts' Reply Brief, dkt. # 85, at 9. The Malek and Halida plaintiffs apparently limit the proposed class to the geographic area of Clark, Price, Lincoln, Oneida, Marathon, Taylor, Portage, Iron and Wood Counties, Wisconsin, which they indicate makes up the "area of influence" identified in the October 29, 1996 expert report of Professor Thomas McGuire.[2] All three plaintiffs exclude from their proposed class defendants The Marshfield Clinic, Security Health Plan, Inc., North Central Health Protection Plan and Rhinelander Medical Center, S.C.; Blue Cross and Blue Shield United of Wisconsin; Compcare Health Services Insurance Corporation; and co-conspirators. Additionally, the Malek and Halida plaintiffs exclude all government entities.

Because the Malek and Halida plaintiffs proposed the same class members and submitted almost identical briefs, I will assume that they are proposing one class jointly. I note that the Rozema proposed class is merely a subset of the Malek and Halida proposed class. Without deciding whether I will certify a class, I note that if I do, it would be only one class of direct purchasers in the identified geographic and product markets during the alleged violation period.

### B. *Class Definition*

■ To permit identification of proposed class members, at a minimum plaintiffs must specify the type of products purchased from each defendant, the relevant geographical area, and the applicable time period. *See Complex Litigation* § 30.14 (noting class may be defined as persons who purchased specified products from defendants during specified time period). The proposed class definitions must not depend on subjective criteria or the merits of the case or require extensive factual inquiry to determine who is a class member. *See Hardy v. City Optical, Inc.,* 39 F.3d 765, 771 (7th Cir.1994) (determining who orally requested contact lens specifications from defendant may require extensive fact-finding and make class action

---

**2.** Plaintiffs had named fifteen additional counties in their first brief but indicate in their reply brief that "[t]hese plaintiffs propose a class consisting of purchasers" from the nine counties listed.

unmanageable); *Adashunas v. Negley,* 626 F.2d 600, 603 (7th Cir.1980) (class certification denied because "extensive individualized fact-finding" necessary to determine whether child was member of class defined as "all learning disabled children in Indiana").

Defendants have raised numerous concerns with plaintiffs' proposed class definitions, arguing that they are indefinite with regard to the relevant product and geographic markets and the duration of the alleged antitrust violations and that plaintiffs rely improperly on the verdict in an earlier lawsuit. I discuss each of defendants' concerns in turn below.

### 1. *Collateral estoppel effect of Blue Cross suit*

Plaintiffs have referred to *Blue Cross & Blue Shield United of Wisconsin v. The Marshfield Clinic,* Case No. 94–C–0137–C, 1997 WL 367324, in their complaints and their briefs in support of the motions for class certification. However, it is unclear to what extent plaintiffs will seek to rely on the findings in *Blue Cross.* Defendants are concerned that plaintiffs are attempting to *use Blue Cross* to define the proposed class and the relevant product and geographic markets. They argue that such reliance would be inappropriate because the liability verdict in *Blue Cross* was unclear as to which product markets were divided and silent on the relevant geographic markets and period of violation.

In the first trial in *Blue Cross,* the jury found that plaintiff had proved that health maintenance organization services, primary care, pediatric care and one or more specialty care markets were "relevant product and geographical markets" (verdict question no. 1) and that defendant had conspired to allocate customers, territories, product or service markets and fix fees and prices in a "relevant market" (verdict question no. 7). *See Blue Cross,* Opin. and Order No. 2 at 8–9, 1997 WL 367324 (April 1, 1997). Most of the jury's verdict was overturned on appeal and the case remanded for a new trial on damages. Because Blue Cross had identified only four markets in the first trial that met the definition of relevant market in the

court's instructions and the jury had found that defendant divided only those markets, Blue Cross was ordered to limit its proof of damages to those markets at the second trial on damages. *See id.* at 15. However, it was impossible to determine from the verdict which services made up each "market," especially the specialty care market. In addition, I found that Blue Cross could not prove that it suffered antitrust injury in any of those product markets. *See id.*

As defendants note, the *Blue Cross* liability verdict did not identify the relevant geographic markets. Plaintiffs state in their briefs that the counties that they have named correspond with the "area of influence" identified by Professor Thomas McGuire, an expert retained by plaintiff Blue Cross to prove damages on remand. However, Professor McGuire's report was found to be inadmissible in *Blue Cross. See id.* As a result, plaintiffs cannot argue that the proposed "area of influence" established a definitive geographic market.

 Plaintiffs must define and prove their own product and geographic markets independently. Any attempt to certify a class or subclasses on the basis of uncertain markets found in *Blue Cross* would be futile. In saying this, I imply no ruling on the use of offensive non-mutual collateral estoppel with regard to any other finding in *Blue Cross.* That issue is not before the court.

### 2. *Relevant product markets*

Defendants contend that plaintiffs have not articulated the specific product market or markets for which they seek class certification and in which they will attempt to prove antitrust liability, injury and damages. Specifically, they are concerned that plaintiffs are alleging numerous and undefinable product markets. *See also Predominance of Common Questions,* section F (further discussing the product market identification problem).

 Although the Rozema plaintiffs allege in their complaint that defendants sell a variety of physician services, defined to include specific services and treatments, they explain in their briefs that they are seeking

to prove violations in one product market of physician services. Similarly, the Malek and Halida plaintiffs allege that defendants sell a number of health care products and services, including total physician care, primary and specialty health care, managed health care plans, inpatient and outpatient hospital services, pharmaceuticals, laboratory tests, outpatient services and facilities packages. However, I am unable to determine whether the Malek and Halida plaintiffs intend an overall product market of health care services or separate product markets for each of the separately named services. Because it is necessary for class certification, the Malek and Halida plaintiffs must define specifically the relevant product market or markets in which they will seek to prove liability, injury in fact and the extent of damages. Plaintiffs are to assume that I will certify only one class of plaintiffs, if any, and define the relevant product market or markets accordingly.

### 3. Relevant geographic markets

Defendants contend that plaintiffs have not defined the relevant geographic market or markets. Although the Malek and Halida plaintiffs did not identify the exact boundaries of the relevant geographic market in their complaints, they make clear in their briefs that the market is limited to nine Wisconsin counties. The Rozema plaintiffs have a similar definition of the relevant geographic market or markets as including eight Wisconsin counties. Both sets of plaintiffs allege that these counties form an "area of influence" constituting one relevant market.

The Malek and Halida plaintiffs include one more county in their relevant area of influence than the Rozema plaintiffs. Because only one class, if any, will be certified, plaintiffs should specify whether the relevant geographic market will comprise eight or nine counties or whether subclasses are required for two different "areas of influence."

It is not clear whether plaintiffs intend membership to depend on where physician services were purchased or on the residence of potential plaintiffs. Before any class can be certified, the Rozema, Malek and Halida plaintiffs must explain this aspect of their class definition. I note that plaintiffs could

have suffered antitrust injury only in those markets where defendants had market power. See William M. Landes & Richard A. Posner, Market Power in Antitrust Cases, 94 Harv. L.Rev. 937, 938 and 955 (1981) (noting necessity of proving effect on prices in private antitrust action, that is, proof of exercise of market power, and explaining that standard manner of proving market power begins with defining a relevant market in which to compute defendants' market share and then computing that share and deciding whether it is large enough to support an inference of required degree of market power). It is unlikely that defendants' market power affected those purchasers living outside the relevant geographic market where substitute products may have been available.

### 4. The alleged violation period

The Rozema, Malek and Halida plaintiffs allege that defendants have unlawfully divided markets since 1987. They include in their proposed class definitions all those who have purchased defendants' products between 1987 and the present. Apparently, plaintiffs intend to include in their proposed class individuals who purchased from defendants both throughout the alleged violation period and during isolated periods. As defendants note, plaintiffs' federal claims are subject to a four-year limitations period and their state claims to a six-year limitations period. See 15 U.S.C. § 15b; Wis. Stat. § 133.18(2). The Rozema plaintiffs have not discussed the effect of the statute of limitations on their proposed class definition. Although the Malek and Halida plaintiffs refer to fraudulent concealment, it is unclear whether they or other potential class members intend to argue that the statutes of limitations were tolled, and if so, how such tolling affects the proposed class definition. For example, it is unclear whether plaintiffs intend to include in the proposed class those individuals who purchased either partly or entirely outside the limitations periods and, if so, on what basis they can bring their federal and state claims. Plaintiffs must provide some explanation of the effect of the statutes of limitations on their proposed class definitions. Additionally, except for plaintiff

Joann Rozema and possibly plaintiff Malek, the proposed class representatives do not appear to have claims outside the limitations period. Plaintiffs must show that the proposed class representatives would be adequate representatives of those potential class members purchasing outside the limitations period. *See Adequacy of representation,* section D.3., *infra,* for a discussion of this requirement.

### C. *Membership in Proposed Class and Standing*

Standing and membership in the proposed class are related requirements that ensure that full litigation will occur. 7B Wright et al. § 1785.1, at 139–140. Serving a similar purpose are the Rule 23 requirements that a class representative be adequate and have a claim typical of those of potential class members. *Id.* Not surprisingly, defendants have raised the issues of standing and class membership repeatedly in their opposition to class certification.

Defendants contend that the named plaintiffs are not members of the class they propose to represent: purchasers of physician services. They argue that because all of the named plaintiffs, except plaintiffs Malek and Henry Rozema, are or were customers of a health maintenance organization (defendant Security Health Plan, Inc.), they do not purchase physician services. Plaintiffs contest defendants' general assertion that health maintenance organization subscribers are not purchasers of physician services, arguing that such an organization is a means of pricing physician services.

■ As plaintiffs note, the Seventh Circuit held in *Blue Cross* that health maintenance organizations did not constitute a separate market, noting that "[a]n HMO is basically a method of pricing medical services." *Blue Cross,* 65 F.3d at 1409 and 1411. Therefore, the fact that some of the plaintiffs are health maintenance organization subscribers does not mean that they were not purchasers of physician services and members of the proposed class.

■ Defendants challenge plaintiffs' standing on the ground that the named plaintiffs did not pay for their own medical services. Defendants assert that as a recipient of Medicare, plaintiff Henry Rozema pays for physician services in an amount determined by law and not the market. In their brief, the Rozema plaintiffs allege that plaintiff Henry Rozema made a direct, unreimbursed payment to defendant The Marshfield Clinic for treatment of a cataract condition in 1995 and purchased a Medicare Supplement Policy from Security Health Plan at an unreimbursed cost of $62.50 per month for two years. If taken as true, and assuming that plaintiffs amend their complaints to add these allegations, plaintiffs' allegations are sufficient to establish that plaintiff Henry Rozema is a direct purchaser of physician services and has standing. Because plaintiffs allege that plaintiff Joann Rozema has purchased physician services directly through an individual health plan policy since 1992, it appears that she has standing.

Defendants argue that plaintiffs Harriet and Lawrence Halida do not have standing because as an administrative employee of the Loyal School District, plaintiff Lawrence Halida did not pay for his and his wife's enrollment in Security Health Plan. Although plaintiff Lawrence Halida did not make any payments while working, the Malek and Halida plaintiffs allege in their brief that he has been responsible for paying one-half of his monthly premium of $579.00 since his retirement in May of 1995. The Halidas have standing to the extent that they paid directly for their health insurance or individual services.

Defendants allege that plaintiff McKay is not a direct purchaser because he receives his coverage through defendant Security Health Plan, Inc. as an employee benefit. Plaintiffs allege that plaintiff McKay is an enrollee of defendant Security Health Plan, Inc. and the sole owner of plaintiff Island Sports Center, also an enrollee of defendant. However, the relationship between these plaintiffs is not clear and plaintiffs do not indicate whether McKay or Island Sports Center purchased physician services directly. Plaintiffs will have to clarify these issues in order to show standing.

**436**

Finally, defendants contend that plaintiff Malek could not have been injured because as a recipient of Medicaid, she pays only a $3.00 co-payment, which is set by law and not the operation of the market. The Malek and Halida plaintiffs allege that plaintiff Malek is a direct purchaser because she has paid the full cost of medical services when she did not qualify for Medical Assistance provided by the State of Wisconsin and has paid eighty percent of the cost of obstetric care when she did qualify for the benefits. However, it is unclear exactly what form of Medical Assistance plaintiff Malek is receiving or has received and how payments are made to the provider under it.

Of particular concern is whether the state or federal government sets either the co-payment or the amount charged for physician services. Apparently, the federal regulations at 42 C.F.R. § 447.54 set minimum and maximum co-payments for Medical Assistance recipients, *see* Wis. Stat. § 49.45(18), but it is unclear whether this affects plaintiff Malek or those whom she represents. If the co-payments made by plaintiffs are set by state or federal law, defendants' alleged market division would not have had any affect on these plaintiffs. Defendants assert that, as with the basic co-payment, the prices of individual services are set by law for those participating in the Medical Assistance Plan. Although state and federal law prohibits providers from charging fees in excess of the amount to be paid by the government, *see* 42 C.F.R. § 447.15; Wis. Stat. § 49.49(3m)(a), I am unable to discern whether the amount paid by the government is determined by law or the provider. To the extent that prices were not set by law and that plaintiff Malek and those whom she represents made unreimbursed payments for services, they have standing. However, plaintiffs will have to clarify in an amended complaint the issues identified above in order to obtain certification for this subclass of plaintiffs.

D. *Requirements of Rule 23(a)*

1. *Numerosity*

The Rozema plaintiffs allege that their proposed class will include approximately 10,000 individuals and the Malek and Halida plaintiffs estimate a class size numbering in the tens of thousands. Certification of classes with as few as forty members has been approved. *Swanson v. American Consumer Industries, Inc.*, 415 F.2d 1326, 1333 n. 9 (7th Cir.1969); 4 Newberg & Conte § 18.04, at 12–14. As long as it is not purely speculative, only a good faith estimate of the size of the proposed class is required. *Arenson v. Whitehall Convalescent & Nursing Home, Inc.*, 164 F.R.D. 659, 662–63 (N.D.Ill. 1996). Although plaintiffs do not have to specify the exact size of their class, they "cannot rely on conclusory allegations that joinder is impracticable or on speculation as to the size of the class." *Marcial v. Coronet Insurance Company*, 880 F.2d 954, 957 (7th Cir.1989) (citing *Vergara v. Hampton*, 581 F.2d 1281, 1284 (7th Cir.1978); *Valentino v. Howlett*, 528 F.2d 975, 978 (7th Cir.1976)). Numerosity problems can be resolved later in the suit. *Id.*

Defendants contend that plaintiffs' estimates are mere speculation, arguing that "there is no way to determine whether there are enough potential consumers in any affected market to justify class treatment." Def's Brief, dkt. # 25 at 12. In order to satisfy the numerosity requirement, plaintiffs will have to define the relevant product market or markets and offer some evidence indicating the estimated number of class members in each market and showing that joinder of all class members would be impracticable. *See, e.g., Aluminum Phosphide Litigation*, 160 F.R.D. at 612 (plaintiffs provided summaries of defendants' customer lists); *Service Spring, Inc. v. Cambria Spring Company*, 1984–1 Trade Cases P 65,801 (CCH) (N.D.Ill.1984), 1984 WL 2925, at 2 (information produced in discovery and defendants' customer lists established numerosity).

As defendants indicate, the Rozema plaintiffs have not offered any direct evidence supporting their estimate of 10,000 class members, noting only that defendant Security Health Plan, Inc. provides services to 70,000 enrollees and defendant The Marshfield Clinic is the largest physician-owned clinic in North America. The Malek and Halida estimate of tens of thousands of potential class members is similarly unsupport-

ed; plaintiffs assert only that defendants were the principal providers of services in the identified geographical area and that defendant Security Health Plan, Inc. provided services to over 100,000 potential class members.

■ Although courts are permitted to make common sense assumptions in support of a finding of numerosity, *see Arenson*, 164 F.R.D. at 662, plaintiffs have not cited to any evidence in the record or provided the court with any means of tying their estimate to the relevant product and geographic markets. The Malek and Halida plaintiffs contend that the number of purchasers and their identities are "easily ascertainable from defendants," but they do not indicate the source of this information or its present whereabouts.

In addition to class size, a court determining numerosity should consider the nature of relief sought and the practicality of forcing relitigation of common issues. *Gomez*, 117 F.R.D. at 399 (citations omitted). Defendants' size and the scope of the alleged market division indicate that class treatment would be appropriate in these cases. Also, because all of the claims relate to the same alleged market division, *see Commonality and typicality*, section D.2., *infra*, forcing individual plaintiffs to litigate their claims seems impracticable and unnecessary. Assuming that plaintiffs can offer some support for their class size estimates, the relief sought and the impracticality of relitigating common issues seem to favor class certification.

### 2. Commonality and typicality

The majority of defendants' arguments against class certification focus on the related requirements of commonality, Rule 23(a)(2), and typicality, Rule 23(a)(3). However, "the force of defendants' opposition is tailored on the 'predominance' (or lack thereof) of common questions of fact and law—which is a consideration for [Rule] 23(b)(3) application." *In Re Catfish Antitrust Litigation*, 826 F.Supp. 1019, 1033 (N.D.Miss.1993). As a result, any discussion of commonality and typicality under Rule 23(a) necessarily overlaps with Rule 23(b)(3). *Id.* Because the two requirements are separate considerations, I

will discuss them separately. *See Predominance of Common Questions*, section F, *infra*, for discussion of Rule 23(b)(3).

■ "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosario*, 963 F.2d at 1018. Some factual variation in the details of individual claims do not defeat a finding of commonality. *Id.* at 1017 (citations omitted); *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 895 (7th Cir.1981). Courts give Rule 23(a)(2) a "highly permissive reading," *Markham v. White*, 171 F.R.D. 217, 222 (N.D.Ill.1997), requiring plaintiffs to show only that there is more than one issue of law or fact in common, *Wagner*, 170 F.R.D. at 451–52. "In antitrust conspiracy cases, courts generally have held that questions concerning the existence, scope and efficacy of the alleged conspiracy are sufficiently common to all class members to satisfy the requirement of Rule 23(a)(2)." 1 *Antitrust Law Developments* H.3. at 714; *see also Catfish Antitrust Litigation*, 826 F.Supp. at 1034 ("Antitrust price fixing conspiracies, by their nature, raise common questions of fact and law about the existence, scope, and effect of the alleged conspiracy."); *State of New York v. Salem Sanitary Carting Corp.*, 1989–2 Trade Cases (CCH) P 68,691, 1989 WL 86997 (E.D.N.Y. 1989) (allocation of customers); *Service Spring*, 1984 WL 2925, at 2 (price fixing).

■ The question of typicality is related closely to commonality. *Rosario*, 963 F.2d at 1018. "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Retired Chicago Police*, 7 F.3d at 597–98 (quoting *De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983)). "Factual distinctions between the claims of the named plaintiffs and those of other class members" do not preclude a finding of typicality; "similarity of legal theory may control even in the face of differences of fact." *De La Fuente*, 713 F.2d at 232. However, to provide effective representation, the named class representatives must have claims with

the "same essential characteristics" as those of the other class members, *id.* and not adverse to other members of the class, *Catfish Antitrust Litigation,* 826 F.Supp. at 1034; *United States v. Davis,* 756 F.Supp. 1162, 1169 (E.D.Wis.1991), *rev'd on other grounds,* 961 F.2d 603 (7th Cir.1992).

■ Plaintiffs have alleged violations of § 1 of the Sherman Act and the corresponding Wisconsin statute. In order to succeed on their antitrust claims, plaintiffs will have to prove 1) the existence of a contract, combination or conspiracy to restrict trade (liability); 2) injury in fact (causation); and 3) the extent of injury (damages). *See J. Truett Payne Company v. Chrysler Motors Corp.,* 451 U.S. 557, 562, 101 S.Ct. 1923, 1927, 68 L.Ed.2d 442 (1981); *Denny's Marina Inc. v. Renfro Productions, Inc.,* 8 F.3d 1217, 1220 (7th Cir.1993); *Service Spring,* 1984 WL 2925, at 2.

Plaintiffs identify the following as common questions of fact and law: whether the judgment in *Blue Cross* has preclusive effect; the existence, duration and illegality of the alleged contracts, combinations or conspiracies; whether plaintiffs suffered antitrust injury; the extent of injury and the appropriate type and measure of damages. Additionally, the Rozema plaintiffs identify as a common issue whether plaintiffs are entitled to injunctive relief and the Halida and Malek plaintiffs identify as common issues whether defendants fraudulently concealed the conspiracy and whether the federal and state statutes of limitations are tolled. Plaintiffs contend that their claims are typical of the proposed class because defendants' alleged market division affected the market price of physician services and caused the proposed class members to pay higher prices for these services.

In opposition, defendants contend that plaintiffs have alleged several different conspiracies in several different product and geographic markets, necessitating individual proof of liability, injury in fact, and damages for each conspiracy in the individual relevant markets. Defendants argue also that class certification is impossible because prices differ for each type of service or treatment, payment structures are calculated differently for each plaintiff, and proof relating to the

affirmative defenses of statute of limitations and standing will differ for each potential class member.

■ In order to satisfy the commonality requirement of Rule 23(a)(2), plaintiffs need show only that one common question exists. I conclude that plaintiffs have met their threshold burden by showing that the existence of the alleged contract, combination or conspiracy would be susceptible to common proof. *See Service Spring,* 1984 WL 2925, at 2 (finding same in a horizontal price fixing case). Although plaintiffs allege more than one market division agreement or relationship in their complaints, they explain in their briefs that they will prove one combination, contract or conspiracy to divide markets.

At this stage of the litigation, plaintiffs must only make a threshold showing that the proof they will offer of the conspiracy will be sufficiently generalized to satisfy the commonality requirement. *See In re Disposable Contact Lens Antitrust Litigation,* 170 F.R.D. 524, 530 (M.D.Fla.1996); *Buford v. H & R Block, Inc.,* 168 F.R.D. 340, 349 (S.D.Ga. 1996). The Malek and Halida plaintiffs assert that they will use common proof focusing on the conduct of defendants, including meetings and discussions between defendants and their co-conspirators, documents showing the exchange of pricing information, the existence of a "free-flow" agreement to restrain competition, and efforts to conceal their actions. Malek and Halida Plts' Reply Br., dkt. # 85 at 21. As an example of the type of evidence that they will use to show the single alleged conspiracy, the Rozema, Malek and Halida plaintiffs refer to interoffice memorandums of defendant The Marshfield Clinic that discuss or at least imply the existence of a "Free–Flow Agreement" by which defendants allegedly agreed with co-conspirators to market within their normal service areas. Rozema Plts' Reply Br., dkt. # 90 at 6–11; Malek and Halida Plts' Reply Br., dkt. # 85 at 11–14.

The ultimate validity of plaintiffs' allegations is a factual issue to be tried and not decided on these motions. *Salem Sanitary,* 1989 WL 86997, at 1. I am satisfied that "all class members share a unity of interest in

how the facts ... will 'fit' the law" regarding the single alleged conspiracy. *Catfish Antitrust Litigation*, 826 F.Supp. at 1034. Further, because proof of liability will focus on defendants' conduct and not defendants' relationship with individual plaintiffs, it is a question common to the entire proposed class and sufficient to satisfy Rule 23(a)(2). *See In Re Potash Antitrust Litigation*, 159 F.R.D. 682, 689 (D.Minn.1995).

Defendants' additional concerns with commonality and typicality become relevant to the more difficult question for certification: whether common issues predominate over individual issues of law and fact under Rule 23(b)(3). *Potash Antitrust Litigation*, 159 F.R.D. at 690. Because ultimately the existence of individual issues may affect the determination of typicality under Rule 23(a)(3), I reserve ruling on whether plaintiffs have satisfied Rule 23(a)(3). However, because plaintiffs' claims arise out of the same alleged course of conduct on the part of defendants and are based on the same legal theory, I do not anticipate the diversity identified by defendants to prevent a finding of typicality. *See Catfish Antitrust Litigation*, 826 F.Supp. at 1036 (typicality inquiry focused on whether class members have the same or similar injury, defendants' conduct is not unique to named plaintiffs and injury resulted from same conduct); *Markham*, 171 F.R.D. at 222–23 (typicality may be found even where varying fact patterns or disparity in damages exist). Defendants' additional concerns with commonality will be addressed below in section F of the opinion.

### 3. *Adequacy of representation*

 In order for plaintiffs to be fair and adequate representatives of the class, three requirements must be met: 1) counsel must be qualified, experienced, and generally able to conduct the proposed litigation; 2) the class representatives must have sufficient interest in the outcome to ensure vigorous advocacy; and 3) the class representatives must not have antagonistic or conflicting interests with other members of the proposed class. *Wagner*, 170 F.R.D. at 451–52 (citations omitted).

Defendants do not contest that plaintiffs have met their burden of showing that their attorneys are qualified, experienced, and able generally to manage this class action. Rather, defendants challenge representation by the named plaintiffs on the grounds that they are not members of the proposed class, do not have viable claims, have conflicting interests with potential class members and are subject to unique defenses.

Defendants argue that none of the named plaintiffs have viable claims either because they do not have standing or cannot show that they sought alternative providers of health care or substitute products. As discussed, all of the named class representatives except plaintiffs Malek, McKay and Island Sports Center (about whom plaintiffs must provide more information) are members of the proposed class and have standing. *See Membership in Proposed Class and Standing*, section C, *supra*. Defendants do not make clear how plaintiffs Town of Mercer's and Island Sports Center's alleged failure to seek alternative health care prevents them from being adequate representatives or support their argument with any authority. They argue only that this fact prevents these plaintiffs from demonstrating that any reduction in competition occurred as a result of market division.

The presence of other providers in the relevant markets is related to the issue of market power, which defendants must have for plaintiffs to show antitrust injury. *See* Landes & Posner, 94 Harv. L.Rev. at 938 and 955. However, I would expect this issue to affect all potential plaintiffs in a given market similarly. It should be addressed on a market and not an individual plaintiff basis. Further, defendants' argument goes beyond the threshold inquiry required for class certification purposes. The availability of competitive alternatives in the relevant markets goes to the merits of these cases: whether defendants illegally divided markets resulting in injury to plaintiffs. Except for plaintiffs Malek, McKay and Island Sports Center, plaintiffs have properly alleged that defendants' unlawful division of markets resulted in overcharges for services, the type of injury that the antitrust laws were intend-

ed to protect. *See Serfecz v. Jewel Food Stores,* 67 F.3d 591, 595 (7th Cir.1995) (citing *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,* 429 U.S. 477, 489, 97 S.Ct. 690, 697–98, 50 L.Ed.2d 701 (1977)) (explaining requirements for antitrust standing).

Defendants identify as a potential conflict between class members the presence of multiple markets, arguing that individual class members will disagree about how the markets should be defined. Citing the affidavit of John D. Culbertson, defendants argue that plaintiffs in product markets where little or no overcharges occurred will have the incentive to define the relevant market more broadly to include products for which greater overcharges were made. However, before a class can be certified, the named plaintiffs must define the product market or markets in which they can show a violation, class-wide injury and damages. *See Relevant product markets,* section B.2., *supra,* and *Commonality and typicality,* section D.2., *supra.* Defendants' concern about the possible problem of varying overcharges in separate product or geographic markets relates to whether injury in fact and damages are subject to common proof and will be discussed in section F, *infra.*

Defendants assert that many potential class members do not share the same interests as the named plaintiffs. In support, defendants produce a letter sent by the Rozema plaintiffs' attorneys to every person who had complained to the Commissioner of Insurance about defendants. Defendants make the unsupported contention that only the Rozemas responded affirmatively to the solicitation for involvement in the current lawsuit, arguing that the lack of response demonstrates a lack of support among potential class members. Even assuming that plaintiffs' attorneys received minimal response to their letter, defendants make an assumption that is not necessarily correct. Although the letter mentioned a possible class action suit, it was directed to people interested in becoming class representatives. *See* Defendants' Exhibit G, dkt. # 74. At most, lack of response to the letter shows that most of the recipients did not want to represent the class.

■ Finally, defendants assert that because the named plaintiffs are subject to unique affirmative defenses, they are not proper class representatives. Defenses that are specific to the named representative may defeat the adequacy of representation or typicality requirements if they are "arguable and likely to usurp a significant portion of the litigant's time and energy." *Hickey v. Great Western Mortgage Corporation,* 158 F.R.D. 603, 609–610 (N.D.Ill.1994) (citing *McNichols v. Loeb Rhoades & Company,* 97 F.R.D. 331, 334 (N.D.Ill.1982)); *see also Koos v. First National Bank,* 496 F.2d 1162, 1164 (7th Cir.1974) ("relatively unique personal defense" may distract representative plaintiffs). The only unique defense that defendants identify is standing. I have found that all named plaintiffs except plaintiffs Malek, McKay and Island Sports Center have met at least the threshold requirements for standing. *See Membership in Proposed Class and Standing,* section C, *supra.* Although standing may be an arguable defense with regard to some of the named plaintiffs, defendants have not shown that it is likely to usurp a significant portion of plaintiffs' time. Moreover, defendants have not shown that standing is a defense unique to the named plaintiffs. In fact, they argue that it is an issue that will affect all plaintiffs. *See Predominance of Common Questions,* section F, *infra.*

Even though defendants' objections do not prevent a finding of adequate representation, I have independent concerns. Although I have no reason to doubt plaintiffs' assertions that their attorneys are well-qualified and experienced litigators, I question whether plaintiffs' attorneys comprehend the extent of this litigation and are able generally to manage this class action. The fact that plaintiffs have not proposed any facts based on evidence derived from discovery or supported all of their arguments with citations to affidavits or other documents in the record does not bode well for adequacy of representation. I am concerned that plaintiffs may be placing excessive reliance on the liability finding in *Blue Cross.* The Rozema plaintiffs assert that the "essential features of the present case are ... embodied in the *Blue*

*Cross* experience" and that they have "narrowly tailored their allegations, their choice of defendants and their proposed class to make the case as similar to, and as manageable as, *Blue Cross.*" Rozema Plts' Reply Br., dkt. # 90, at 3–4. The Malek and Halida plaintiffs state that "damages will be proven on a class-wide basis and based on the same antitrust conspiracy and much of the same supporting evidence presented in *Blue Cross v. Marshfield Clinic.*" Malek and Halida Plts' Reply Br., dkt. # 85, at 38. Given the problems that plaintiff Blue Cross encountered in proving causation and damages, plaintiffs' reliance may be misplaced. *See* Opin. & Order, Case No. 94–C–0137–C, 1997 WL 367324 (April 1, 1997). I will reserve ruling on the adequacy of representation until plaintiffs have provided further information in support of class certification.

### E. *Requirements of Rule 23(b)*

The Rozema, Halida and Malek plaintiffs argue that class certification is appropriate under Rule 23(b)(3), which requires that the court find:

> ... that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Defendants oppose certification under Rule 23(b)(3), arguing the predominance of the individual issues identified in the discussion of commonality.

The Rozema plaintiffs argue briefly that they also satisfy the requirements of Rule 23(b)(1) and (2), but this argument has little force. Subsections (b)(1) and (2) allow class actions when:

> (1) the prosecution of separate actions by or against individual members of the class would create a risk of (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Neither of these provisions applies to this case.

■ Arguing for the applicability of Rule 23(b)(1)(A), the Rozema plaintiffs assert that individual suits would create a risk that defendants would be held to incompatible standards of conduct because some may win and others may loose. "However, that some plaintiffs may ultimately be successful against a defendant while others may not is simply not a ground for invoking Rule 23(b)(1)(A)." *Hurd v. Monsanto Company,* 164 F.R.D. 234, 239 (S.D.Ind.1995) (citing Newberg & Conte § 17.14 ("The fact that there will be some winners and some losers does not meet the test.")). In support of certification under Rule 23(b)(1)(B), plaintiffs contend that individual adjudication would quickly diminish defendants' assets and damage the interests of future plaintiffs. However, plaintiffs have not offered any evidence that defendants have a limited fund. *Listle v. Milwaukee County,* 170 F.R.D. 17, 19 (E.D.Wis.1996) (holding same and noting that other courts have denied class certification for this reason). Further, because the claims of individual purchasers are likely to be relatively small, it is unlikely that separate lawsuits would deplete defendants' financial resources and prevent others from recovering.

Rule 23(b)(2) is appropriate when an injunction is the predominant form of relief requested. *See Gaspar v. Linvatec Corporation,* 167 F.R.D. 51, 59 (N.D.Ill.1996). The Rozema plaintiffs have requested injunctive relief and treble damages under § 4 of the Clayton Act. Given the possibility of treble damages, injunctive relief is not the predominant form of requested relief. Further, the Honorable Judge Shabaz has enjoined defendants The Marshfield Clinic and Security Health Plan, Inc. from further market division activities and this injunction has been affirmed by the Seventh Circuit. *See Blue Cross v. Marshfield Clinic,* 65 F.3d 1406 (7th Cir.1995), *cert denied,* —— U.S. ——, 116 S.Ct. 1288, 134 L.Ed.2d 233 (1996).

Because Rule 23(b)(3) is better suited for claims of monetary damages, *see Gaspar,* 167 F.R.D. at 60, it is the appropriate means of certifying a class in these cases. Under Rule 23(b)(3), plaintiffs must show that common questions prevail over individual questions of fact and law and that a class action would be superior to other available methods of adjudication. I will discuss briefly what defendants have identified as individual questions of fact and law and their effect on the issue of predominance. However, until plaintiffs define their proposed class further and respond to the questions posed in this opinion, it is impossible to decide whether they have satisfied the predominance and superiority requirements of Rule 23(b)(3).

### F. *Predominance of Common Questions*

Defendants argue that even though the existence of the alleged conspiracy may be subject to common proof, class-wide treatment of injury in fact and damages is impossible. In support of their assertion that injury in fact (overcharges resulting from the alleged illegal conduct) is susceptible to common proof, plaintiffs cite to the Declaration of Dr. H.E. Frech, dkt. # 89. Dr. Frech believes that the alleged market division had a measurable class-wide impact. He states that "basic economic theory" dictates that market division "would tend to result in higher prices to all consumers" and that because the market division agreements apply to "an entire range of physician services, impact would be practically identical for every mem-

ber of the class." Frech Decl., dkt. # 89 at 5.

Although Frech's declaration is conclusory, plaintiffs need make only a threshold showing that injury in fact is susceptible to common proof. "At this stage of litigation, the Court need not concern itself with whether [p]laintiffs can prove their allegations regarding common impact; the Court need only assure itself that plaintiffs' attempt to prove their allegations will predominately involve common issues of fact and law." *Lumco Industries, Inc. v. Jeld–Wen, Inc.,* 171 F.R.D. 168, 173–74 (E.D.Pa.1997). I am satisfied that plaintiffs have met their burden. Plaintiffs allege that defendants' conduct caused them to overpay for services, and "it is likely that each plaintiff would have experienced the same impact of paying more" for defendants' services than they would have paid in a competitive market. *Aluminum Phosphide Litigation,* 160 F.R.D. at 614–15 (addressing same issues in price fixing claim).

Defendants argue that plaintiffs have not specified a formula for calculating damages on a class-wide basis. However, plaintiffs do not have to supply a precise damage calculation formula for class certification. *Potash Antitrust Litigation,* 159 F.R.D. at 697. The court's only inquiry is whether the proposed methods are so "insubstantial as to amount to no method at all." *Id.* (citation omitted). Plaintiffs have at least indicated the type of method that they will use to prove damages (the amount of overcharge). Frech proposes using a competitive market as a benchmark to show common impact and calculate damages, indicating that the overcharge would be the difference between the price paid and the benchmark price. Frech Decl., dkt. # 89 at 7. As defendants assert, damage amounts will vary among plaintiffs. However, "[t]here have been many antitrust class actions in which the relief sought was damages, and the fact that the damages would generally be different for each member of the class was not deemed an insuperable obstacle." *Hardy,* 39 F.3d at 771; *see also Catfish Antitrust Litigation,* 826 F.Supp. at 1043 ("individual ques-

tions of damages are often encountered in antitrust actions, and they are rarely a barrier to certification"); *Lumco,* 171 F.R.D. at 173–74 (holding same).

Although causation and the amount of damages are susceptible to common proof by the use of benchmarks or other comparative methods, I caution plaintiffs to plan carefully how they will prove class-wide effect and damages. In their discussion of damage calculation, Frech and plaintiffs cite the expert reports submitted in *Blue Cross* by Dr. Beyer and Dr. McGuire. However, after plaintiffs filed their briefs, Beyer's and McGuire's reports were found inadmissible in *Blue Cross. See* Opin. & Order, Case No. 94–C–0137–C, 1997 WL 367324 (April 1, 1997). The propriety of the benchmarks used by the experts was a matter of concern. *See id.* Any future class certification in these cases will be conditioned on plaintiffs' proffer of relevant and admissible evidence of class-wide causation and damages in the defined product and geographic markets.

Defendants argue that multiple product markets, different prices and methods of payment for different types of plaintiffs and the affirmative defenses of standing and statute of limitations create individual questions of fact and law that will predominate over common questions. I address each of these concerns in turn.

### 1. *Multiple markets*

Defendants contend that because they sell their services in a number of different product and geographic markets, class members will have to make different showings of market power and market impact in each of those markets. As discussed, plaintiffs must clarify the relevant product market or markets. However, defendants are incorrect in assuming that because they offer many types of services, there necessarily are numerous product markets. The Court of Appeals for the Seventh Circuit has indicated that physician services do constitute a cognizable product market. *See Blue Cross,* 65 F.3d at 1416. Plaintiffs also have alleged one relevant geographic market, which includes the identified counties in one "area of influence." On this basis, a class action in this case would be

manageable and not subject to multiple mini-trials over a number of different product and geographic markets. If problems with commonality or manageability arise in conjunction with the definition of the relevant markets, it will be possible to divide the class into subclasses or decertify the class. *See* Fed.R.Civ.P. 23(c); *Kleiner v. First National Bank of Atlanta,* 97 F.R.D. 683, 695 (N.D.Ga. 1983).

### 2. *Pricing and payment differences*

Defendants argue that proof of injury in fact and damages are complicated by the fact that there is no single product sold at a single price and payment methods differ among plaintiffs. As discussed, plaintiffs appear to be alleging one product market of physician services and an effect common to the class within that market: paying more for physician services than they would have paid in a competitive market. Pricing differences would affect the amount of damages suffered by each plaintiff, but not whether they suffered injury. *See Potash Antitrust Litigation,* 159 F.R.D. at 695. The asserted differences in payment methods present individual issues in deciding whether particular plaintiffs are direct purchasers and how much they paid. However, if plaintiffs' allegations are taken as true, these plaintiffs suffered the same injury (overcharges). Individual questions would arise only in calculating damages. As indicated above in the discussion of damages, class certification is not precluded by the fact that some individual proof as to the amount of damages may be necessary. *Aluminum Phosphide Antitrust Litigation,* 160 F.R.D. at 615 (citing *Catfish Antitrust Litigation,* 826 F.Supp. at 1043).

### 3. *Affirmative defenses*

Defendants argue that to avoid the expiration of the applicable statutes of limitations, each plaintiff would have to prove fraudulent concealment and due diligence efforts. The Halida and Malek plaintiffs have alleged fraudulent concealment by defendants and the tolling of the statute of limitations, but they have not indicated whether these issues are susceptible to common proof. The Rozema plaintiffs have not discussed the issue.

"Challenges based on the statute of limitations, fraudulent concealment ... have usually been rejected and will not bar predominance satisfaction because those issues go to the right of a class member to recover, in contrast to underlying common issues of the defendant's liability." 1 Newberg & Conte § 4.26, at 104. I expect that any evidence of fraudulent concealment and circumstances triggering the duty of due diligence would be common to the class. *Catfish Antitrust Litigation,* 826 F.Supp. at 1044; *Aluminum Phosphide Antitrust Litigation,* 160 F.R.D. at 615. For example, plaintiffs would have to explain why the filing of the *Blue Cross* case did not alert potential class members to possible antitrust violations. However, as indicated above, plaintiffs will have to expand their explanation of the effect of the statutes of limitations on their proposed class definitions and whether these issues may be refuted on a class-wide basis. *See Class Definition,* section C, *supra.*

Defendants seem to argue that each potential class member must satisfy an individualized standing inquiry. "Authority to the contrary could not be clearer." *T.R. Coleman v. Cannon Oil Company,* 141 F.R.D. at 524 (citing Newberg & Conte § 2.07, at 53–54 (2d ed.)). Those represented in a class action are passive members and need not make individual showings of standing. Newberg & Conte § 2.07, at 40–41 (citing *American Pipe & Construction Company v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974)). However, the claims of the class representative must be typical of those of the class under Rule 23(a)(3) in order for the potential class members to share standing with the class representative. *Id.* at 42–43. Therefore, standing does not create individual questions of fact or law preventing the certification of the proposed class under Rule 23(b)(3).

## ORDER

IT IS ORDERED that plaintiffs will have twenty days or until the 9th day of June, 1997, in which to file and serve a proposed amended complaint correcting the deficiencies in their allegations identified in this opinion.